**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**ODELMY JAMILETH PADILLA,**

**Petitioner,**

**v.** **Civil Action No. 3:26cv725**

**PAUL PERRY, *et al.*,**

**Respondents.**

# MEMORANDUM OPINION

This matter comes before the Court on Petitioner Odelmy Jamileth Padilla's Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.)[1] Petitioner alleges that Respondents unlawfully revoked her Order of Supervision in violation of her substantive and procedural due process rights under the Fifth Amendment to the United States Constitution,[2] the Administrative Procedure Act ("APA"), and the *Accardi* doctrine, and that her detention is *ultra vires*. (ECF No. 1 ¶¶ 11–55.) Respondents filed an opposition to the Petition, (ECF No. 4), Petitioner replied, (ECF No. 6), and both parties filed supplemental briefs at the Court's direction, (ECF Nos. 8, 9).

For the reasons articulated below, the Court will grant the Petition and order Respondents to release Petitioner under the terms of her preexisting Order of Supervision.

---

[1] The Court employs the pagination of the CM/ECF docketing system.

[2] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

## I. Factual and Procedural Background

### A. Factual Background[3]

Petitioner is a native and citizen of Honduras. (ECF No. 5-1 ¶ 5.) United States Border Patrol Agents ("Border Patrol") first encountered Petitioner on August 9, 2006 at the United States border near Mexico. (ECF No. 5-1 ¶ 6.) The same day, the Department of Homeland Security ("DHS") processed Petitioner for expedited removal, and Petitioner was removed to Honduras on August 18, 2006. (ECF No. 5-1 ¶¶ 6–7.) On April 7, 2019, Border Patrol again encountered Petitioner in the United States near the El Paso, Texas border with Mexico. (ECF No. 5-1 ¶ 8.) On April 8, 2019, DHS served Petitioner with a Form I-871, Notice of Intent/Decision to Reinstate Prior Order. (ECF No. 5-1 ¶ 10.)

On April 9, 2019, DHS released Petitioner on an alternative-to-detention ("ATD") program under an Order of Supervision.[4] (ECF No. 5-1 ¶ 10.) Over seven years later, on July 22, 2026, DHS arrested Petitioner in Silver Spring, Maryland and transferred her to the Caroline Detention Facility in Bowling Green, Virginia. (ECF No. 5-1 ¶¶ 12, 14; ECF No. 1 ¶ 2.) The same day, DHS served Petitioner with a Notice of Revocation of Release Form 71-091 (the "Revocation Notice") and a Notice of Intent/Decision to Reinstate Prior Order Form I-871. (ECF No. 5-1 ¶ 13; ECF No. 5-2, at 1–2 (Revocation Notice).) The parties agree that Petitioner

---

[3] The Petition includes few facts about Petitioner's background and underlying immigration proceedings. The following facts are derived primarily from a sworn declaration submitted by Acting Assistant Field Office Director Michael Coles as part of Respondents' opposition to the Amended Petition. (ECF No. 5-1.) Unless otherwise noted, Petitioner does not dispute those facts.

[4] Neither party provided a copy of Petitioner's Order of Supervision.

is subject to a reinstated order of removal. (ECF No. 8, at 1; ECF No. 9, at 1); 8 U.S.C. § 1231(a)(5).[5] The Revocation Notice revoked Petitioner's Order of Release pursuant to 8 C.F.R. § 241.1(*l*) because ICE had the "ability and means" to effectuate Petitioner's removal based on ICE's securing travel documents and a date for Petitioner's removal. (ECF No. 5-2, at 1.) Deputy Field Office Director Nikita Baker signed the Revocation Notice. (ECF No. 5-2, at 2.)

On July 25, 2026, several hours after Petitioner filed the instant Petition, DHS transferred Petitioner to the South Louisiana ICE Processing Center. (ECF No. 5-1 ¶ 15.) Respondents submit that ICE's removal efforts have paused as a result of the instant habeas action, absent which "ICE would be able to proceed with Petitioner's removal to Honduras." (ECF No. 5-1 ¶ 3.)

**B. <u>Procedural Background</u>**

Petitioner filed the Petition on July 25, 2026. (ECF No. 1.) On August 3, 2026, Respondents responded in opposition, (ECF No. 4), and on August 6, 2026, Petitioner replied, (ECF No. 6). On August 12, 2026, both parties filed supplemental briefing at the Court's direction. (ECF Nos. 8, 9.)

---

[5] 8 U.S.C. § 1231(a)(5) permits the Attorney General to reinstate a final order of removal where a noncitizen has "reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." *Id.* In those cases, the petitioner's final order of removal is "reinstated from its original date," "is not subject to being reopened or reviewed," and the noncitizen is not eligible and may not apply for any relief under the INA. *Id.* Rather, the noncitizen "shall be removed under the prior order at any time after the reentry." *Id.*

## II. Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III. Analysis

Petitioner argues that she is unlawfully detained because Respondents' revocation of her Order of Supervision violated her substantive and procedural due process rights under the Fifth Amendment (Counts 1 and 2), several provisions of the APA (Counts 3–5), the *Accardi* doctrine, (Count 7), and that Respondents' detention of Petitioner is *ultra vires*, (Count 6). (ECF No. 1 ¶¶ 11–55.) Respondents disagree, contending that ICE lawfully revoked her Order of Supervision. (ECF No. 8, at 3–7.)[6]

---

[6] In passing, Respondents suggest that because the regulations governing the revocation of an order of supervision grant discretion to ICE, the Court lacks jurisdiction to review DHS' revocation of the Order of Supervision. (ECF No. 8, at 6 (citing 8 U.S.C. §§ 1252(a)(2)(B)(i) and (ii) and 5 U.S.C. § 701(a)(2).) The Court cannot agree.

First, 8 U.S.C. § 1252(a)(2)(B)(i) strips a court of jurisdiction to review "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." This provision does not apply because Petitioner does not ask the Court to review any judgment for relief under §§ 1182(h) (providing discretion to waive certain criminal grounds of inadmissibility) or (i) (providing discretion to waive inadmissibility based on fraud or willful misrepresentation of material fact in certain circumstances); § 1229b (governing cancellation of removal); § 1229c (governing voluntary departure); or § 1255 (governing adjustment of status of nonimmigrants to lawful permanent residents). 8 U.S.C. § 1252(a)(2)(B)(i).

For the reasons articulated below, the Court finds that Respondents failed to follow their own regulations in revoking Petitioner's Order of Supervision in violation of her Fifth Amendment rights. The Court will grant the Petition as to Counts 2 and 7.

### A. DHS Did Not Follow Its Regulations in Revoking Petitioner's Order of Supervision in Violation of the *Accardi* Doctrine and Petitioner's Fifth Amendment Rights

Petitioner argues that ICE failed to follow its own regulations in revoking her Order of Supervision, and that doing so violates the *Accardi* doctrine and her procedural due process rights under the Fifth Amendment. (ECF No. 1 ¶¶ 16–21, 51–55; ECF No. 9, at 3, 5–6.) The Court agrees that, based on the record before the Court, ICE failed to comply with 8 C.F.R. § 241.4(*l*)(2)[7] in revoking Petitioner's Order of Supervision because there is no evidence that the

---

Second, 8 U.S.C. § 1252(a)(2)(B)(ii) bars a court from reviewing, other than a claim for asylum, "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security," but that provision does not control here. 8 U.S.C. § 1252(a)(2)(B)(ii).

While the relevant DHS regulation here—8 C.F.R. § 241.4—allows specified ICE officials to revoke supervised release "in the exercise of discretion," 8 C.F.R. § 241.4, Petitioner has not challenged DHS' *discretion* to revoke her supervision but its *process* in doing so. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 154–55 (W.D.N.Y. 2025) (finding that § 1252(a)(2)(B)(ii) does not bar a court from hearing a petitioner's challenge to a revocation notice because § 1252(a)(2)(B)(ii) does not bar courts from "address[ing] the process used to exercise [] discretion" under § 1252(a)(2)(B)(ii)) (citing *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015) (holding that § 1252(a)(2)(B)(ii)'s jurisdictional bar does not apply to challenges regarding an agency's own procedures); *Musunuru v. Lynch*, 831 F.3d 880, 887–88 (7th Cir. 2016) (same); *Islam v. Dir. of U.S. Citizenship & Immigration Servs.*, No. 24-1086, 2025 WL 1554777, at *3 n.2 (4th Cir. June 2, 2025) (denying relief at a different procedural posture but citing *Mantena* and *Musunuru* favorably while noting that petitioner waived argument on whether USCIS violated its own procedures).

Third and finally, because the Court does not decide Petitioner's claims under the APA, its jurisdiction stripping provision is not implicated. *See* 5 U.S.C. § 701(a)(2).

[7] DHS may also revoke an order of supervision under 8 C.F.R. § 241.13(i). *See Ceesay*, 781 F. Supp. 3d at 159–60 & n.22. Neither the Revocation Notice nor the parties contend that

ICE official who signed Petitioner's Revocation Notice had authority to do so or made the requisite findings, and that doing so violated *Accardi* and Petitioner's due process rights.

### 1. Legal Standard: Revocation of an Order of Supervision Under 8 C.F.R. § 241.4(*l*)(2)

DHS revoked Petitioner's Order of Supervision pursuant to 8 C.F.R. § 241.4(*l*)(2).[8] (ECF No. 5-2, at 1.) That regulation provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(2).

---

Petitioner's Order of Supervision was revoked pursuant to § 241.13, so the Court limits its analysis to § 241.4(*l*). (*See, e.g.*, ECF No. 5-2, at 1.)

[8] 8 C.F.R. § 241.4(*l*)(1) governs revocation based on a noncitizen's violations of his or her conditions of release. Respondents submit (with little detail, and no evidentiary support) that "[d]uring the course of her supervised release, Petitioner committed twelve [] violations for missed call-backs, failed in-person home visits, and low battery levels." (ECF No. 5-1 ¶ 11.) Because these purported violations did not serve as the basis for the Revocation Notice—the Revocation Notice indicates only that Petitioner's Order of Supervision was revoked in order to effectuate her removal order—the Court confines its analysis to § 241.4(*l*)(2). (ECF No. 5-2, at 1–2.)

Section 241.4(*l*)(2) thus governs who may revoke an order of supervision and on what basis. First, as to who may revoke release, § 241.4(*l*)(2) authorizes only the "Executive Associate Commissioner" or a "district director" (if he or she makes additional findings) to revoke a noncitizen's release. *Id.*; *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025). As many courts have observed, § 241.4(*l*)'s reference to "Executive Associate Commissioner" and "district director" are artifacts from an earlier version of the Immigration and Nationality Act ("INA") that referred to positions within the Immigration and Naturalization Service ("INS"). *Ceesay*, 781 F. Supp. 3d at 160; *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2841886, at *3 (D. Md. Oct. 7, 2025). Courts around the country have persuasively found that the position of "Executive Associate Commissioner" is the equivalent of the present "Executive Associate Director." *Santamaria Orellana*, 2025 WL 2841886, at *3; *cf. Montes v. Mullin*, No. 1:26-cv-926 (LMB), ECF No. 12, at 6–7 (E.D. Va. May 20, 2026). The position of "district director" may include a Field Office Director. 8 C.F.R. § 1.2 (defining "director" or "district director" to mean, *inter alia*, a field office director); *but see* 8 C.F.R. §§ 287.5(e)(i), (xxxix) (identifying officials with the power to issue immigration arrest warrants and listing "district directors" and "field office directors" separately); *Montes*, No. 1:26-cv-926, ECF No. 12, at 6–7 (citing *Ndoye v. Joyce*, No. 26-cv-1219, 2026 WL 765635, at *4 (S.D.N.Y. Mar. 17, 2026)). But it does not include a *Deputy* Field Office Director. *M.S.L. v. Bostock*, No. 6:25-cv-01204, 2025 WL 2430267, at *9–10 (D. Or. Aug. 21, 2025).

Second, the regulation provides the bases—including four specific grounds, § 241.4(*l*)(2)(i)–(iv)—on which DHS can revoke release. In addition to those four grounds, if the authorizing individual is a "district director," he or she may only revoke release when (1) "revocation is in the public interest" and (2) "circumstances do not reasonably permit referral

of the case to the Executive Associate Commissioner." § 241.4(*l*)(2); *Serpas v. Simon*, 834 F. Supp. 3d 656, 665–66 (E.D. Va. 2026); *Ciciliano v. Guadian*, 837 F. Supp. 3d 760, 764–65 (E.D. Va. 2026).

### 2. DHS Did Not Comply with § 241.4(*l*)(2) When it Revoked Petitioner's Order of Supervision

The Revocation Notice failed to comply with § 241.4(*l*)(2) in two respects. First, it was not signed by an authorized individual. Second, even were it signed by an authorized individual, it improperly lacked any finding that revocation was in the public interest and that the circumstances did not permit referral of the case to the Executive Associate Commissioner. Because DHS failed to follow the regulations intended to govern its conduct, its revocation of Petitioner's Order of Supervision is invalid. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Serpas*, 834 F. Supp. 3d at 665–66 (finding that respondents violated the *Accardi* doctrine in revoking a petitioner's order of supervision under 8 C.F.R. § 241.4(*l*)(2)); *Ciciliano*, 837 F. Supp. 3d at 764–65 (same).

#### a. The Revocation Notice Was Not Issued by an Authorized Individual Under § 241.4(*l*)

As Petitioner correctly argues, the Revocation Notice was authorized not by an ICE Executive Office Director or an ICE Field Office Director, but by *Deputy* Field Office Director Nikita Baker. (ECF No. 5-2, at 1; ECF No. 6, at 4–5.) Section 241.4(*l*) plainly does not authorize a *deputy* field office director to revoke an order of supervision. *See* 8 C.F.R. § 241.4(*l*); *M.S.L.*, 2025 WL 2430267, at *9–10.

In an effort to establish Deputy Director Baker's authority under § 241.4(*l*), Respondents rely on DHS' June 10, 2026 ERO Delegation Order (the "Delegation Order") signed by Marcus D. Charles, the Acting Executive Director for ICE Enforcement and Removal Operations

("ERO"). (ECF No. 8-1.) The Delegation Order purports to delegate, pursuant to 8 C.F.R. § 241.4(c)(4),[9] the Executive Associate Director's authority in 8 C.F.R. § 241.4(*l*)(2) to revoke orders of supervision to other ERO officials including, *inter alia*, Deputy Field Office Directors.[10] (ECF No. 8-1, at 1–2.) Beyond pointing to the Delegation Order, Respondents cite no authority and make no argument that the Delegation Order validly delegates the Executive Associate Director's authority. For three reasons, the Court finds that § 241.4(c)(4) does not authorize such a delegation of authority.

First, the location of § 241.4(c)(4) within § 241.4 indicates that its terms apply to *initial custody* determinations, not *post-release revocation* determinations.[11] Section 241.4(c) is titled

---

[9] 8 C.F.R. § 241.4(c) provides, in relevant part:

> (c) *Delegation of authority*. The Attorney General's statutory authority to make *custody determinations* under sections 241(a)(6) and 212(d)(5)(A) of the Act when there is a final order of removal is delegated as follows:
>
>> (4) *Additional delegation of authority.* All references to the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, and the district director in this section shall be deemed to include any person or persons (including a committee) designated in writing by the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, or the district director to exercise powers under this section.

8 C.F.R. § 241.4(c)(4) (emphasis added).

[10] The Delegation Order also provides that the Executive Associate Director's authority to delegate power under § 241.4 is "derived from ICE Delegation Order No. 0001, Delegation of Authority to the Directors, Detention and Removal and Investigations, and to Field Office Directors, Special Agents in Charge and Certain other Officers of the Bureau of Immigration and Customs Enforcement (June 6, 2003)." Respondents did not provide a copy of that delegation order, and the Court cannot locate a publicly available copy.

[11] Section 241.4 does not define "custody determination." But § 241.4(c) references 8 U.S.C. §§ 1231(a)(6) and 1182(d)(5)(A), both of which explain when the Attorney General may release or detain a noncitizen subject to a final order of removal. In other words, they prescribe the Attorney General's power to make an *initial custody* determination. Neither

"Delegation of Authority" and, through several subsections, expressly delegates the Attorney General's authority to make "custody determinations" under 8 U.S.C. §§ 1231(a)(6) and 1182(d)(5)(A) to certain officials. For example, § 241.4(c)(1) delegates the Attorney General's statutory authority to make *initial custody* determinations to the "district director or the Director of the Detention and Removal Field Office having jurisdiction over the alien." § 241.4(c)(1). Section 241.4(c)(2) delegates the Attorney General's authority to review a noncitizen's *initial custody* determination after the 90-day removal period has passed to the "Executive Associate Commissioner, acting through the [Headquarters Post-Order Detention Unit ('HQPDU')]." § 241.4(c)(2). Another subsection, § 241.4(c)(3), delegates the Attorney General's authority to the Executive Associate Commissioner to appoint a director of the HQPDU with authority to "establish and maintain" files for each alien "to be reviewed for possible release" and to "coordinate activities" associated with those reviews. § 241.4(c)(3). Most relevant here, the fourth and final subsection, titled "additional delegation of authority," further delegates the authority identified in § 241.4(c) as follows:

> All references to the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, and the district director in this section shall be deemed to include any person or persons (including a committee) designated in writing by the Executive Associate Commissioner, the Director of the Detention and Removal Field Office, or the district director to exercise powers under this section.

8 C.F.R. § 241.4(c)(4).

Respondents apparently read § 241.4(c)(4) to authorize the delegation of authority beyond *initial custody* determinations to include *post-release revocation* determinations. But

---

mentions the Attorney General's power to revoke release if he or she chooses to release the noncitizen. This suggests that an *initial custody* determination is distinct from a *post-release revocation* determination.

§ 241.4(c)(4) is situated within § 241.4(c), which plainly provides for the Attorney General's delegation of authority to make "*custody* determinations." § 241.4(c) (emphasis added); *see also* 241.4(c)(1)–(c)(3) (governing delegations of *custody* determinations); *cf.* § 241.4(*l*) (governing *revocation* determinations). Given its placement within § 241.4(c), the Court declines to read § 241.4(c)(4)'s sweeping delegation to apply beyond its clearly cabined limitation: delegations with respect to *initial custody* determinations. *Gazazyan v. Bondi*, No. 5:25-cv-02599-SRM-DTB, 2025 WL 3898484, at *6–7 (C.D. Cal. Nov. 7, 2025) ("Although it is true that Sections 241.4(c)(4) . . . delegates custody determinations to certain officials, nothing in the regulatory language suggests this delegation of authority equally applies to determinations pertaining to a noncitizen's revocation of supervised release."); *Tanashyan v. Mullin*, No. 5:26-cv-4455, 2026 WL 2538250, at *5 (C.D. Cal. Aug. 27, 2026) (explaining that § 241.4(c)(4) "concern[s] custody determinations and custody review procedures, not determinations of revocations of release").

Second, to read § 241.4(c)(4) as authorizing the delegation of authority purported in the Delegation Order would render superfluous other portions of § 241.4. *Gazazyan*, 2025 WL 3898484, at *6–7. For example, another subsection of § 241.4, § 241.4(h), governs custody review procedures. Like § 241.4(c)(4), § 241.4(h)(5) delegates authority from the "district director" or the "Director of the Detention and Removal Field Office" to "persons directly responsible for detention" in particular jurisdictions when conducting custody reviews, recommendations, and custody or release decisions. § 241.4(h)(5). "[I]f section 241.4(c)(4) alone properly delegated the responsibilities outlined in Section 241.4 as a whole, then it would render Section 241.4(h)(5)'s delegation provision redundant." *Gazazyan*, 2025 WL 3898484, at *7. The Delegation Order's attempt to leverage § 241.4(c)(4) to delegate the authority described by § 241.4(*l*) is thus at odds with one of the most basic interpretive canons: that a statute or

regulation should be construed "so that effect is given to all its provisions, [and] so that no part will be inoperative or superfluous, void or insignificant." *Gazazyan*, 2025 WL 3898484, at *7 (quotation omitted); *Black & Decker Corp. v. C.I.R.*, 986 F.2d 60, 65 (4th Cir. 1993) ("Regulations, like statutes, are interpreted according to canons of construction. Chief among these canons is the mandate that constructions which render regulatory provisions superfluous are to be avoided.") (quotation omitted).

Third and finally, while the sections of § 241.4 governing *initial custody* determinations and custody review procedures include express (and expansive) delegation provisions, *see* §§ 241.4(c), (h)(5), the plain language of § 241.4(*l*) limits authority to make *post-release revocation* determinations to individuals in two positions and contains no similar delegation provision, § 241.4(*l*). If that authority were delegable in the way the Delegation Order purports, § 241.4(*l*), like its sister provisions (§§ 241.4(c) and 241.4(h)(5)), would have said so.

Because § 241.4(c)(4)'s delegation of authority is limited to *initial custody* determinations, not *post-release revocation* determinations, it does not provide a basis for the sweeping delegation purportedly authorized in the Delegation Order. As its terms provide, § 241.4(*l*)(4) authorizes a revocation of supervised release only by an Executive Associate Commissioner or a district director. *Gazazyan*, 2025 WL 3898484, at *7 (emphasis added) ("[I]t [is] . . . evident that Section 241.4 intended to delegate certain responsibilities to certain officials under sections 241.4(c)(4) and (h)(5) but did *not* delegate the authority to revoke supervised release status under Section 241.4(*l*)(2) to officials other than the Executive Associate Commissioner or a district director."). Because Deputy Field Office Director Baker is neither,

she did not have authority to issue the Revocation Notice, meaning the Revocation Notice did not comply with § 241.4(*l*)(4).[12]

#### b. The Revocation Notice Did Not Include a Determination That Revocation Was in the Public Interest and That the Circumstances Did Not Permit Referral to the Executive Associate Commissioner

Even assuming that Deputy Field Office Director Baker could exercise the authority of a district director, § 241.4(*l*)(2) requires a contemporaneous determination (1) that revocation served the public interest and (2) that the circumstances did not reasonably permit referral to the Executive Associate Commissioner. *Serpas*, 834 F. Supp. 3d at 666–67; *Ciciliano*, 837 F. Supp. 3d at 764–65.

There is no evidence in the record—and Respondents do not argue otherwise—that Deputy Field Office Director Baker made a finding that revocation served the public interest or that the circumstances did not permit referral to the Executive Associate Commissioner. The Revocation Notice merely states that Petitioner's Order of Supervision was being revoked to "enforce the removal order entered" against her because ICE has the "ability and means" to

---

[12] The Court is familiar with at least three cases rejecting challenges to the validity of a revocation notice signed by an official acting pursuant to authority delegated under § 241.4(c)(4). *See Fuentes-Cruz v. Lyons*, No. 26-cv-4257 (BMC), 2026 WL 2740436, at *3–4 (E.D.N.Y. Sep. 16, 2026); *Koita v. Jamison*, No. 26-3301, 2026 WL 2168721, at *5–6 (E.D. Pa. July 28, 2026); *see also Gonzalez v. Warden, Krome Processing Cntr.*, No. 26-cv-21593-JB, 2026 WL 2212895, at *4 (S.D. Fla. Aug. 1, 2026).

None of these cases bind this Court. In addition, none evaluate the scope of the delegation authority in § 241.4(c)(4) and whether it extends to delegations of authority to revoke orders of release. For the reasons articulated above, the Court concludes that it does not. The Court therefore declines to follow *Fuentes-Cruz*, *Koita*, and *Gonzalez*. *See Henriquez v. Mullin*, No. 1:26-cv-2159, 2026 WL 2455272, at *3 n.3 (E.D. Va. Aug. 20, 2026) (finding that order of supervised release was improperly revoked and suggesting there may be "substantial issues concerning the propriety of the purported delegation" in the Delegation Order); *Ambrocio Lopez v. Mullin*, No. 1:26-cv-2104 (LMB), 2026 WL 2532313, at *3–4 (E.D. Va. Aug. 25, 2026) (same).

effectuate her removal. (ECF No. 5-2, at 1.) Courts in this District have found that materially similar language falls far short of satisfying § 241.4(*l*)(2)'s requirements. *See, e.g.*, *Ambrocio Lopez v. Mullin*, No. 1:26-cv-2104 (LMB), 2026 WL 2532313, at *4 (E.D. Va. Aug. 25, 2026). Without evidence of such a finding, the Revocation Notice cannot serve as DHS' basis for detaining Petitioner.[13]

As many courts have observed, "[n]ot every technical failure to comply with policies or procedures violates the Constitution, [but] the requirement that the Executive Associate Director make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement." *Santamaria Orellana*, 2025 WL 2841886, at *5. "A statutory or regulatory provision" like § 241.4(*l*), "requiring that a decision affecting personal rights be made only by a designated senior official is fairly deemed to be an important procedural safeguard." *Id.*; *Serpas*, 834 F. Supp. 3d at 666–67 ("[T]he requirement that a senior official make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement but instead part of a procedural framework, designed to [e]nsure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus to implicate due process."); *Ceesay*, 781 F. Supp. 3d at 156–57 ("Procedure is not mere puffery, a gesture that is irrelevant so long as the result is correct. The Constitution safeguards not just substantive rights under the law, but *due process* as well. That process is at the core of what our Constitution guarantees.") (citing U.S. Const. amends. V, XIV) (emphasis in

---

[13] Petitioner also argues that the Revocation Notice violated DHS' regulations because it failed to check the "specific reasoning for the revocation" under 8 C.F.R. § 241.4(*l*)(1). Because the Court finds that the Revocation Notice was issued by an official without authority (and without the necessary findings), it need not address this argument.

original), Accordingly, DHS' failure to comply with § 241.4(*l*) not only violated *Accardi*, but Petitioner's Fifth Amendment due process rights.

Where ICE fails to follow its own procedural framework in violation of the Fifth Amendment, release under the preexisting order of supervision is the appropriate habeas remedy. *Ambrocio Lopez*, 2026 WL 2532313, at *4 & n.5 (collecting cases).

## IV. Conclusion

Because Respondents failed to comply with § 241.4(*l*)(2)'s requirements before revoking Petitioner's order of supervision, her detention is unlawful. The Court will grant the Petition, (ECF No. 1), order Respondents to transport Petitioner to Virginia, and release her. (*See* ECF No. 6, at 6 (requesting that the Court order Petitioner returned to Maryland, where she was arrested).)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
Chief United States District Judge

Date: 11/17/26
Richmond, Virginia